**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 61021-3-II |
| Appellant, | |
| v. | |
| CHRISTOPHER LYNN SPANJER, | PUBLISHED OPINION |
| Respondent. | |

MAXA, J. – The State appeals the trial court's order disqualifying the entire Pierce County Prosecuting Attorney's Office (PCPAO) from prosecuting charges against Christopher Spanjer. This case arose out of an incident in which Spanjer fled a traffic stop and subsequently crashed his vehicle into Sean Plunkett's vehicle, which caused injuries to Plunkett. Plunkett is employed as a deputy prosecuting attorney with the PCPAO's criminal division.

Spanjer was charged with seven offenses, including vehicular assault relating to Plunkett's injuries. Spanjer moved to disqualify the entire PCPAO from prosecuting him because of Plunkett's employment in the office. The trial court granted the motion, relying on the appearance of fairness doctrine.

The State concedes that Plunkett is disqualified from participating in this case because he is a victim of one of Spanjer's charged offenses and a necessary witness. However, the State

argues that under controlling precedent, the trial court erred by ruling that disqualification of the entire PCPAO was necessary. Spanjer argues that the trial court correctly ruled that disqualification of the entire office was necessary based not only on Plunkett's conflict of interest but on the entire PCPAO's conflict because Plunkett was their colleague.

After this case was set for oral argument, Spanjer withdrew his objection to the PCPAO handling his case and pleaded guilty. Spanjer argues that as a result of his guilty plea, this appeal is moot. The State argues that we still should address the disqualification order on the merits.

We reach the merits of this appeal under the continuing and substantial public interest exception to the mootness doctrine. On the merits, we hold that (1) under applicable case law and the current version of the Rules of Professional Conduct (RPCs), Plunkett's conflict of interest as an alleged crime victim does not require disqualification of the entire PCPAO; and (2) the PCPAO's potential conflict of interest because Plunkett is their colleague does not require disqualification of the entire PCPAO.

Accordingly, we hold that the trial court erred in disqualifying the entire PCPAO in this case.

FACTS

The State alleged that on September 10, 2024, Spanjer fled a traffic stop and struck a vehicle that Plunkett was driving, which resulted in injury to Plunkett. Plunkett is employed as a deputy prosecuting attorney with the PCPAO and works in the criminal division.

The next day, the PCPAO restricted Plunkett from accessing the digital file for Spanjer's case. On September 12, the State charged Spanjer with six offenses related to the September 10 incident: unlawful possession of a stolen vehicle, failure to remain at an injury accident, attempting to elude a pursuing police vehicle, driving while under the influence, making or

possessing motor vehicle theft materials, and third degree driving while in suspended or revoked status. The case eventually was transferred to deputy prosecutor Miriam Norman.

In January 2025, after receiving additional information regarding Plunkett's injuries, the State filed an amended information that added one count of vehicular assault of Plunkett to the original charges.

Norman had very little interaction with Plunkett before her assignment to this case. Norman stated that she was instructed not to discuss the case with Plunkett except in her official capacity, as she would with any crime victim. For example, she did conduct a victim interview with Plunkett, which is her normal practice in vehicular assault cases. Norman stated that the case had been handled consistently with her other cases. The victim witness advocate for the PCPAO assigned to this case participated in the victim interview and also stated that she handled this case in the same manner as her other cases.

Plunkett stated that he would not participate as a deputy prosecuting attorney in the Spanjer case and had been screened from the case through various mechanisms. He only interacted with Norman in her official capacity regarding this case.

Spanjer moved to disqualify the entire PCPAO from prosecuting him. He argued that disqualification was necessary to avoid the appearance of unfairness. In addition, Spanjer argued that under RPC 3.7(b), office-wide disqualification was necessary because Plunkett likely would be a witness at trial. At the hearing on the motion, Spanjer argued that Plunkett's role in the office would make it "difficult for any DPA in the [PCPAO] to exercise independent judgment." Clerk's Papers (CP) at 54.

The trial court granted Spanjer's motion to disqualify the entire PCPAO. In its oral ruling, the court stated, "[T]he appearance of fairness comes into play in whether or not this

3

defendant is going to be treated differently in terms of the Prosecutor's Office analysis, in whether or not an offer will be made, what type of offer will be made." CP at 62. In its written ruling, the court stated that "[Plunkett's] colleagues likely have a vested interest in his wellbeing." CP at 74. The court continued, "The pressure of having a colleague as the victim, could affect the State's ability to handle this case, affect the State's ability to make an appropriate plea offer, and affect the State's ability to treat Mr. Spanjer as those similarly situated who are facing the same charges." CP at 74.

The State moved for discretionary review of the trial court's oral ruling. While the motion for discretionary review was pending, this court stayed enforcement of the trial court's disqualification order. A commissioner of this court granted the State's motion for discretionary review.

After this case was set for oral argument, Spanjer and the PCPAO reached a mutually agreeable plea bargain. This court granted the parties' motion under RAP 7.2(e) seeking permission to allow the trial court to formally consider the plea and impose sentence. Spanjer subsequently withdrew his objection to the PCPAO handling his case and pleaded guilty.

ANALYSIS

A.    MOOTNESS

Spanjer argues that his guilty plea renders this appeal moot. The State does not dispute that the issue is moot but argues that we should review this case because it presents an issue of continuing and substantial public interest. We conclude that because Spanjer has entered a guilty plea, we no longer can provide effective relief. But we will reach the merits under the continuing and substantial public interest exception to the mootness doctrine.

An issue is moot if we can no longer provide effective relief. *In re Pers. Restraint of Blaylock*, 30 Wn. App. 2d 569, 577, 546 P.3d 86 (2024). However, we may reach the merits of a moot issue if it implicates a matter of continuing and substantial public interest. *Id.* Whether a case involves a substantial public interest depends on whether (1) the issue is of a private or public nature, (2) an authoritative determination is desirable to provide future guidance to public officers, and (3) the issue is likely to recur. *State v. B.O.J.*, 194 Wn.2d 314, 321, 449 P.3d 1006 (2019). In addition, courts consider whether the issue will escape review because the facts of the controversy are short-lived. *Id.* Courts also consider the quality of advocacy and adverseness of the parties. *Id.*

The relief the PCPAO seeks in this case is the ability to prosecute Spanjer. Because Spanjer has pleaded guilty, there no longer is a case to prosecute. Therefore, we are not able to provide effective relief to the State.

However, we conclude that the continuing and substantial public interest exception to the mootness doctrine applies in this case. Considering the need for an authoritative determination to provide future guidance and the likelihood that this question will recur but continue to evade review, we will reach the merits of this case.

B.     DISQUALIFICATION OF ENTIRE PCPAO

The State argues that the trial court erred by disqualifying the entire PCPAO. We agree because neither Plunkett's conflict of interest nor the entire PCPAO's potential conflict of interest based on Plunkett's status as their colleague required office-wide disqualification.

1.     Standards of Review

We review a trial court's decision to grant or deny a motion to disqualify an attorney for an abuse of discretion. *State v. Orozco*, 144 Wn. App. 17, 19, 186 P.3d 1078 (2008). An abuse

of discretion occurs when a trial court's decision is based on untenable reasons. *State v. Ferguson*, 25 Wn. App. 2d 727, 735, 524 P.3d 1080 (2023). A discretionary decision rests on untenable reasons if the trial court applied the wrong legal standard. *Id*.

Whether attorney conduct violates the RPCs, including whether a conflict of interest exists, is a question of law that we review de novo. *State v. Nickels*, 195 Wn.2d 132, 136, 147, 456 P.3d 795 (2020); *see also State v. O'Neil*, 198 Wn. App. 537, 543, 393 P.3d 1238 (2017) ("whether a conflict exists requiring withdrawal is a question of law.").

2. Legal Principles

Conflicts within a prosecuting attorney's office potentially threaten the "public's confidence in the impartial administration of justice and the appearance of a just proceeding." *Nickels*, 195 Wn.2d at 138. " '[T]he public has a right to absolute confidence in the integrity and impartiality of the administration of justice.' " *Id.* at 139 (quoting *State v. Tracer*, 173 Wn.2d 708, 720, 272 P.3d 199 (2012)). This right is impaired when a conflict of interest exists that may give the appearance that a proceeding is " 'unjust and prejudicial.' " *Nickels*, 195 Wn.2d at 139 (quoting *Tracer*, 173 Wn.2d at 720). "[C]onflicts of interest implicate not only a defendant's right to a fair trial but also the State's and the public's interest in maintaining the appearance of a fair judicial process." *Nickels*, 195 Wn.2d at 139.

However, the "appearance of fairness doctrine" does not require the disqualification of an entire prosecuting attorney's office because the Supreme Court held that the doctrine does not apply to prosecutors performing their executive functions. *State v. Finch*, 137 Wn.2d 792, 808-10, 975 P.2d 967 (1999); *see also Doyle v. Lee*, 166 Wn. App. 397, 403, 272 P.3d 256 (2012).

RCW 36.27.030 permits a trial court to replace a prosecuting attorney if they are unable to perform their duties due to "illness or other cause." A conflict of interest can make a

6

prosecuting attorney, or deputy prosecuting attorney, unable to perform their official duties. *See*

*Westerman v. Cary*, 125 Wn.2d 277, 301, 892 P.2d 1067 (1994).

The RPCs identify situations in which an attorney has a conflict of interest. RPC 1.7(a)

states,

> [A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
> . . . .
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited . . . by a personal interest of the lawyer.

The general rule is that when the elected prosecuting attorney previously has represented

the defendant "in the same case or closely interwoven matter," disqualification of the entire

prosecuting attorney's office is presumptively proper. *Nickels*, 195 Wn.2d at 138. However, the

rule is different for deputy prosecutors:

> [W]here a *deputy prosecuting attorney* is for any reason disqualified from a case, and is thereafter effectively screened and separated from any participation or discussion of matters concerning which the deputy prosecuting attorney is disqualified, then the *disqualification of the entire prosecuting attorney's office is neither necessary nor wise.*

*State v. Stenger*, 111 Wn.2d 516, 522-23, 760 P.2d 357 (1988) (emphasis added); *see also*

*Nickels*, 195 Wn.2d at 136.

The Supreme Court amended RPC 1.10 and RPC 1.11 in 2006. *Nickels*, 195 Wn.2d at

136-37. RPC 1.10(d) states the "disqualification of lawyers associated in a firm with former or

current government lawyers is governed by Rule 1.11." RPC 1.11(d)(1) states that a government

attorney is "subject to Rule[] 1.7." RPC 1.7(a) states as follows:

> Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more

clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Recognizing the special problems created by office-wide disqualification within a government agency, RPC 1.11 comment 2 states that "paragraph (d) does not impute the conflicts of a lawyer currently serving as an officer or employee of the government to other associated government officers or employees, although ordinarily it will be prudent to screen such lawyers."[1]  "[T]hese rules now provide that a government lawyer's personal conflict of interest is no longer imputed to their entire office." *Nickels*, 195 Wn.2d at 137.  The "RPCs have eliminated imputations of conflicts among government attorneys generally and permit screening in most circumstances." *Id.* at 142.

RPC 3.7(a) states that, "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness."  But RPC 3.7(b) provides: "A lawyer *may* act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7."  (Emphasis added.)  RPC 3.7 comment 7 states that if "the testifying lawyer would also be disqualified by Rule 1.7 or Rule 1.9 from representing the client in the matter, other lawyers in the firm will be precluded from representing the client by Rule 1.10."

3.   Applicable Cases

The issue here is whether the trial court abused its discretion by disqualifying the entire PCPAO because the alleged victim of one of Spanjer's offenses was a deputy prosecutor in the

---

[1] RPC 1.11 comment 2 adds, "*But see State v. Nickels*, 195 Wn.2d 132, 456 P.3d 795 (2020) (holding that an elected county prosecutor's former client conflict is imputed to all attorneys in the prosecuting attorney's office)."

office. No court in this state has addressed this precise issue. The parties reference cases that address the disqualification of an entire prosecuting attorney's office for other reasons.

In *Stenger*, the defendant was charged with aggravated first degree murder and the prosecutor's office had filed an intent to seek the death penalty. 111 Wn.2d at 518. The elected prosecuting attorney previously had represented the defendant in unrelated cases. *Id.* The trial court denied the defendant's motion to disqualify the entire prosecuting attorney's office. *Id.* at 520. The Supreme Court reversed, stating,

> Where the prosecuting attorney (as distinguished from a deputy prosecuting attorney) has previously personally represented the accused in the same case or in a matter so closely interwoven therewith as to be in effect a part thereof, the entire office of which the prosecuting attorney is administrative head should ordinarily also be disqualified from prosecuting the case and a special deputy prosecuting attorney appointed.

*Id.* at 522. As noted above, the court emphasized that office-wide disqualification is not required when a deputy prosecutor is disqualified from a case and is effectively screened from the case. *Id.* at 523.

In *Finch*, a defendant shot and killed a Snohomish County sheriff's deputy, and the defendant moved to recuse the entire Snohomish County Prosecutor's Office. 137 Wn.2d at 803, 808. The defendant's motion was based on a statement made by a prosecutor at the time of the incident that appeared in the newspaper. *Id*. at 808. The prosecutor "stated that [the sheriff's deputy] was respected by every member of our department and people are taking this as hard as the people in the sheriff's office." *Id.* (internal quotation marks omitted). The trial court denied the defendant's motion to disqualify the entire prosecuting attorney's office. *Id.*

The Supreme Court rejected the defendant's argument that the prosecuting attorney's office violated the appearance of fairness doctrine. *Id*. at 808-810. The court stated that the appearance of fairness doctrine only applies to "*judicial and quasi-judicial decisionmakers*." *Id*.

9

at 808. The court observed that "[w]hether a decision is quasi-judicial in nature depends on whether the decision was adjudicatory in nature." *Id*. at 809. And the court determined that "[a] prosecutor's determination to file charges, to seek the death penalty or to plea bargain are executive, not adjudicatory." *Id*. at 810.

Further, the court pointed out that different standards of neutrality apply to prosecutors and judges because unlike judges, prosecutors are not required to be entirely neutral and are " 'necessarily permitted to be zealous in their enforcement of the law.' " *Id*. at 810 (quoting *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 248, 100 S. Ct. 1610, 64 L. Ed. 2d 182 (1980). Therefore, the court held that the trial court did not err in declining to require office-wide disqualification of the prosecuting attorney's office. *See Finch*, 137 Wn.2d at 810.

In *State v. Schmitt*, a deputy prosecutor was a likely witness at trial because the defendant planned to argue that his victim did not report the crime until after she spoke with the deputy prosecutor. 124 Wn. App. 662, 664, 667, 102 P.3d 856 (2004). The trial court disqualified the entire prosecuting attorney's office because the deputy prosecutor was a material witness in the case. *Id*. at 667. This court held that the trial court abused its discretion when it disqualified the entire office, relying on *Stenger*'s rule that office-wide disqualification is unnecessary when a disqualified deputy prosecutor is effectively screened. *Id*. at 669.

In *Nickels*, the elected county prosecuting attorney had provided legal assistance to the defendant at an earlier stage in the case before becoming the prosecutor. 195 Wn.2d at 134-35. The trial court denied the defendant's motion to disqualify the entire prosecuting attorney's office, but the Court of Appeals reversed. *Id.* at 135.

The Supreme Court affirmed the Court of Appeals. *Id.* at 142. The State argued that the presumptive disqualification rule regarding elected prosecuting attorneys announced in *Stenger*

10

no longer applied because the RPCs were amended to "provide that a government lawyer's personal conflict of interest is no longer imputed to their entire office." *Id.* at 137. But the Supreme Court read the amendments to the RPCs in harmony with *Stenger*'s "narrow rule" that "office-wide disqualification is presumptively proper when an elected prosecutor has previously represented the defendant in the same case or closely interwoven matter." *Id.* at 138.

The court stated,

> What is determinative is our evaluation of the effect of permitting the office of a conflicted elected prosecutor who retains significant administrative and discretionary powers, regardless of any screening – to prosecute the *same* defendant in the *same* case, which we must then measure against the public's right to *absolute* confidence in the integrity and impartiality of the administration of justice and the appearance of a just proceeding. *See Tracer*, 173 Wn.2d at 720-21. *Stenger* was right – except in extraordinary circumstances, office-wide disqualification . . . is most faithful to the principles of integrity and impartiality required of our justice system.

*Id.* at 140.

However, the court reiterated that "office-wide disqualification was 'neither necessary nor wise' when a *deputy* [prosecutor] was personally disqualified" as opposed to the elected prosecuting attorney. *Id*. at 136 (quoting *Stenger*, 111 Wn.2d at 523).

None of these cases directly address the issue here – whether the entire prosecuting attorney's office should be disqualified from a case in which a deputy prosecutor is the crime victim.

4. Analysis

    a.   Plunkett's Conflict

The State concedes that Plunkett is disqualified from participating in Spanjer's case under RPC 1.7(a)(2) and RPC 3.7(a). However, because Plunkett was effectively screened, the State

argues that disqualification of the entire PCPAO is not required due to Plunkett's conflict. We agree.

First, the court in *Stenger* stated that office-wide disqualification is not necessary where a conflicted deputy prosecutor is "effectively screened and separated from any participation or discussion" of the matter. 111 Wn.2d at 523. The court in *Nickels* reiterated this rule. 195 Wn.2d at 136. Here, there is no evidence that the screening procedure the PCPAO enacted to prevent Plunkett from participating in Spanjer's case was ineffective.

The conflict in *Stenger* was a prosecutor's prior representation of the defendant, not a prosecutor's status as the crime victim. 111 Wn.2d at 518. But the court in *Stenger* stated that the general rule that office-wide disqualification is not required applies when a deputy prosecutor "is *for any reason* disqualified from a case." *Id*. at 523 (emphasis added); *see also Schmitt*, 124 Wn. App. at 667-69 (applying rule to situation where deputy prosecutor was disqualified because they were a necessary witness, rather than because of a former client conflict). Therefore, under the general rule stated in *Stenger*, Plunkett's conflict does not require the disqualification of the entire PCPAO.

Second, RPC 1.11 comment 2 states that "paragraph (d) does not impute the conflicts of a lawyer currently serving as an officer or employee of the government to other associated government officers or employees." The 2006 amendments to RPC 1.10 and RPC 1.11 "have eliminated imputations of conflicts among government attorneys generally and permit screening in most circumstances." *Nickels*, 195 Wn.2d at 142. "[T]hese rules now provide that a government lawyer's personal conflict of interest is no longer imputed to their entire office." *Id.* at 137. The only exception to this rule is when an elected prosecuting attorney previously has represented a defendant in the same or a similar matter. *See id*. at 142.

Spanjer argues that RPC 1.11 comment 2 only applies to former client conflicts. But the plain text of the comment does not limit its scope to just those conflicts. Had the drafters intended to limit the scope of this statement, they could have distinguished between the kinds of conflicts that are not imputed – as they did in other rules. *See* RPC 1.10(a) (distinguishing personal conflicts of interest from other conflicts). Therefore, under RPC 1.11 comment 2, Plunkett's conflict does not require the disqualification of the entire PCPAO.

Third, RPC 3.7(b) specifically allows a lawyer to act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness. RPC 3.7 comment 7 states that if RPC 1.7 would disqualify a testifying lawyer, other lawyers would be precluded from representing the client by RPC 1.10. But RPC 1.10(d) states that the disqualification of lawyers associated in a firm with former or current government lawyers is governed by Rule 1.11. And attorney conflicts are not imputed to other associated government officers or attorneys under RPC 1.11 comment 2. Therefore, Plunkett's status as a necessary witness does not require the disqualification of the entire PCPAO.

We conclude that Plunkett's conflict of interest because of his status as an alleged crime victim and witness in Spanjer's case does not require the disqualification of the entire PCPAO.

b. The PCPAO's Conflict

Spanjer argues that apart from Plunkett's conflict, every attorney at the PCPAO has a conflict of interest because Plunkett was their colleague. He claims that this conflict requires the disqualification of the entire PCPAO. We disagree.

Spanjer endorses the trial court's reasoning on this issue. The trial court's written order stated that "[Plunkett's] colleagues likely have a vested interest in his wellbeing" and that this could affect their ability to handle the case. CP at 74. The court further stated, "The pressure of

13

having a colleague as the victim, could affect the State's ability to handle this case, affect the State's ability to make an appropriate plea offer, and affect the State's ability to treat Mr. Spanjer as those similarly situated who are facing the same charges." CP at 74.

The trial court's oral ruling references the appearance of fairness doctrine, which as stated above is inapplicable to prosecutors performing their executive functions. *Finch*, 137 Wn.2d at 808-10. But Spanjer's argument relies on the more general notions of fairness expressed in *Nickels*: "[T]he public's right to *absolute* confidence in the integrity and impartiality of the administration of justice and the appearance of a just proceeding." 195 Wn.2d at 140.

We conclude that Plunkett's status of the victim in Spanjer's case does not affect the integrity and impartiality of the administration of justice and the appearance of a just proceeding.

First, the record shows that the deputy prosecutor handling the case – Norman – had little interaction with Plunkett before she was assigned to the case. This is not a situation where Norman and Plunkett were close personal friends as opposed to being mere co-employees in a large prosecutor's office. There is no indication that Norman had a special interest in Plunkett's wellbeing or that she would change how she handled the case because he was the victim of one of Spanjer's alleged offenses.

Second, there is no actual evidence that the PCPAO has treated Spanjer's case any differently because Plunkett was the victim of one of Spanjer's alleged crimes. The trial court referenced possible plea offers, but there is no evidence that the PCPAO refused to make an appropriate plea offer. In fact, Spanjer's subsequent entry into a plea agreement with the PCPAO indicates that Plunkett's status did not cause the PCPAO to treat Spanjer unfairly. And there is no indication that Norman has failed to exercise independent judgment in handling the case. The record shows that the PCPAO employees assigned to this case have not deviated from their

normal practice in similar cases. In the absence of any contrary evidence, we do not assume that Norman will act unethically by seeking an unjust result unsupported by the evidence.

Third, prosecutors often have a close relationship with crime victims and their families and feel like they have an obligation to those victims to obtain a conviction of the alleged perpetrators or a favorable plea agreement. There is no indication that the PCPAO would treat Plunkett differently than any other crime victim. Similarly, prosecutors are responsible for obtaining convictions against those people accused of crimes. There is no indication the PCPAO would treat Spanjer differently than any other person accused of a crime.

Fourth, the court in *Nickels* discussed the "impartiality of the administration of justice and the appearance of a just proceeding" to support a narrow rule that applies only to elected prosecuting attorneys. 195 Wn.2d at 140. The court stated that "no amount of screening can be sufficient to fully wall off [the elected prosecutor] from the case" because of the significant authority over a case that an elected prosecutor retains even after being screened. *Id*. at 139. Here, screening is sufficient to preserve the appearance of fairness because subordinate attorneys do not retain similar authority over a case after screening. And there is no indication here that the elected prosecuting attorney had a personal conflict of interest. Therefore, the court's analysis in *Nickels* is distinguishable.

Fifth, *Finch*, 137 Wn.2d 792, presents a somewhat analogous situation. In that case, the court reviewed a motion to recuse an entire prosecuting attorney's office based on a statement a prosecutor made that would suggest that the prosecutors at the office had a personal connection to the crime victim. *Id*. at 808. Similarly, Spanjer's argument is based on the fact that the members of the PCPAO had a personal connection to Plunkett because of his status as their

coworker.  But the Supreme Court in *Finch* refused to disqualify the entire prosecuting attorney's office on this basis.  *See id.* at 810.

Accordingly, we conclude that the PCPAO's relationship with Plunkett did not require the disqualification of the entire PCPAO.

CONCLUSION

We hold that the trial court erred in disqualifying the entire PCPAO in this case.

_____
MAXA, J.

We concur:

_____
PRICE, A.C.J.

_____
CHE, J.